Brendan Cummings (CA Bar No. 193952)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252
Phone:   (760) 366-2232
Facsimile: (760) 366-2669
Email: bcummings@biologicaldiversity.org

Andrea A. Treece (CA Bar No. 237639)
Miyoko Sakashita (CA Bar No. 239639)
CENTER FOR BIOLOGICAL DIVERSITY
San Francisco Bay Area Office
1095 Market Street, Suite 511
San Francisco, CA 94103
Phone:   (415) 436-9682
Facsimile: (415) 436-9683
Email: atreece@biologicaldiversity.org
        miyoko@biologicaldiversity.org

Andrew E. Wetzler (CA Bar No. 202299)
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter St., 20th floor
San Francisco, CA 94104
Phone:  (614) 840-0891
Facsimile: (415) 875-6161
Email: awetzler@nrdc.org

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, NATURAL RESOURCES DEFENSE COUNCIL, and PACIFIC ENVIRONMENT, non-profit corporations, | Case No.: |
| | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Plaintiffs, | |
| v. | |
| DIRK KEMPTHORNE, Secretary of the Interior, and U.S. FISH AND WILDLIFE SERVICE, | |
| Defendants. | |

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

## I.    INTRODUCTION

1.      In this civil action for declaratory and injunctive relief, Plaintiffs Center for Biological Diversity ("the Center"), Natural Resources Defense Council ("NRDC"), and Pacific Environment challenge the failure of Defendants Dirk Kempthorne, Secretary of the Interior, and the U.S. Fish and Wildlife Service (collectively "FWS") to comply with the non-discretionary provisions of the Endangered Species Act, 16 U.S.C. §§ 1531-1544 ("ESA"), with regard to the protection of the yellow-billed loon (*Gavia adamsii*).  Specifically, FWS has failed to determine whether it will propose listing the yellow-billed loon as a "threatened" or "endangered" species, in response to a petition filed by Plaintiffs and other concerned conservation groups and scientists, within the time required by the statute.  16 U.S.C. § 1533.

2.      On April 5, 2004, FWS received a petition from Plaintiffs seeking listing of the yellow-billed loon as "threatened" or "endangered" under the ESA.  (Petition to list the yellow-billed loon, *Gavia adamsii*, as an endangered or threatened species under the Endangered Species Act (March 30, 2004) ("Petition").)  As set forth in the Petition, the yellow-billed loon is one of the rarest of the loon species, relying on fragile Arctic habitat that is increasingly susceptible to environmental change and disturbance.  Global warming and accelerating pressures associated with oil and gas development in its habitat have placed the yellow-billed loon in the cross-hairs of increased disturbance, habitat destruction, and pollution.  Immediate listing under the ESA is necessary to provide the yellow-billed loon the protection it needs to survive.

3.      Under the ESA, FWS had one year from the date it received the Petition to either issue a proposed rule listing the species as threatened or endangered or to find that such listing is "not warranted." 16 U.S.C. § 1533(b).  This deadline for this "12-month finding", which FWS has no discretion to extend, was due no later than April 5, 2005.

4.      On June 11, 2007, Plaintiffs sent FWS a 60-day notice of intent to sue as required by the ESA, putting the agency on notice that litigation would be filed if the required finding was not timely issued.  FWS has not remedied its violation of law.  Accordingly, Plaintiffs request this Court to order FWS to make the overdue 12-month finding on their Petition by a date certain, so that the yellow-billed loon will receive the protections to which it is statutorily entitled and so desperately needs.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

## II.    JURISDICTION, VENUE, and INTRADISTRICT ASSIGMENT

5.    The Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) & (g) (action arising under the ESA and citizen suit provision), 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 702 (Administrative Procedure Act), and 28 U.S.C. § 1361 (Mandamus).   The relief sought is authorized by 28 U.S.C. §§ 2201 (declaratory judgment) and 28 U.S.C. § 2202 (injunctive relief).

6.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(e) as at least one of the Plaintiffs resides in this judicial district and the yellow-billed loon occurs in this judicial district.

7.    Pursuant to Local Rules 3-5(a) and 3-2(c) and (d), assignment of this case to the San Francisco or Oakland Division is appropriate.

8.    By written notice sent by certified mail on June 11, 2007, Plaintiffs informed Defendants of their violations more than sixty days prior to the filing of this Complaint, as required by the ESA.  16 U.S.C. § 1540(g).  Despite receipt of Plaintiffs' notice letter, Defendants have failed to remedy their violations of the ESA.

9.    An actual, justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

10.    Plaintiff has no adequate remedy at law.  Defendants' continuing failure to comply with the ESA will result in irreparable harm to the yellow-billed loon, to Plaintiffs and Plaintiffs' members, and to the public.  No monetary damages or other legal remedy can adequately compensate Plaintiffs, it members, or the public for this harm.

11.    Plaintiffs and Plaintiffs' members are adversely affected or aggrieved by federal agency action and are entitled to judicial review of such action within the meaning of the ESA and the APA. Defendants' failure to comply with the ESA's mandatory deadlines prevents the completion of the listing process and therefore the implementation of measures to protect the yellow-billed loon pursuant to the ESA.  Without the substantial protections of the ESA, yellow-billed loons are more likely to continue to decline and become extinct.  Plaintiffs are therefore injured because Plaintiffs' use and enjoyment of the yellow-billed loon, and those areas inhabited by the loon and described below, are threatened by Defendants' violation of the ESA.  Defendants' failure to comply with the ESA's

1  deadlines has also resulted in informational and procedural injury to Plaintiffs, because Plaintiffs have
2  been deprived of a timely opportunity to submit additional information and otherwise participate in the
3  listing process in order to secure appropriate protective measures for the species. These are actual,
4  concrete injuries to Plaintiffs, caused by Defendants' failure to comply with the ESA, the APA, and
5  their implementing regulations. The relief requested will fully redress those injuries.

6       12.     The federal government has waived sovereign immunity in this action pursuant to 16
7  U.S.C. § 1540(g) and 5 U.S.C. § 702.

8                              **III.   PARTIES**

9       13.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a non-profit
10  501(c)(3) corporation with offices in San Francisco, Joshua Tree, and San Diego, California; as well as
11  in Arizona, New Mexico, Oregon; and Washington, D.C. The Center is actively involved in species
12  and habitat protection issues throughout the United States, including protection of Arctic wildlife in
13  general and the yellow-billed loon in particular. The Center has over 35,000 members throughout the
14  United States and the world.

15      14.     Plaintiff NATURAL RESOURCES DEFENSE COUNCIL, Inc. ("NRDC") is a national
16  environmental advocacy group. The NRDC is registered to do business in California and maintains
17  offices in San Francisco, Los Angeles, Washington, D.C., New York City, Chicago, and Beijing.
18  Through advocacy, education, litigation, and other efforts, NRDC works to preserve threatened and
19  endangered wildlife across the United States and around the world, including Arctic wildlife in general
20  and the yellow-billed loon in particular. The NRDC has over 420,000 members nationwide, over
21  80,000 of whom reside in the State of California.

22      15.     Plaintiff PACIFIC ENVIRONMENT is a non-profit environmental organization whose
23  mission is to protect the living environment of the Pacific Rim. Based in San Francisco, Pacific
24  Environment achieves this mission by strengthening democracy, supporting grassroots activism,
25  empowering local communities and redefining international policies. Pacific Environment is
26  particularly dedicated to promoting international efforts to protect biodiversity and to protect rare and
27  endangered species like the yellow-billed loon.

28      16.     Plaintiffs' members and staff include individuals with varying interests in yellow-billed

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF            Page 3

loons and their habitat ranging from scientific, professional, and educational to recreational, aesthetic, moral, and spiritual. Further, Plaintiffs' members and staff enjoy, on an on-going basis, the biological, scientific, research, education, conservation, recreational and aesthetic values of the regions inhabited by this species. Plaintiffs' staff and members observe and study yellow-billed loons and their habitat, and derive professional, scientific, educational, recreational, aesthetic, inspirational, and other benefits from these activities and have an interest in preserving the possibility of such activities in the future. An integral aspect of the Plaintiffs' members' use and enjoyment of yellow-billed loons is the expectation and knowledge that the species is in its native habitat. For this reason, Plaintiffs use and enjoyment of yellow-billed loons is entirely dependent on the continued existence of healthy, sustainable populations in the wild. Plaintiffs bring this action on their own behalf and on behalf of their adversely affected members and staff.

17.    Defendant DIRK KEMPTHORNE, United States Secretary of the Interior, is the highest ranking official within the Department of the Interior and, in that capacity, has ultimate responsibility for the administration and implementation of the ESA with regard to the yellow-billed loon, and for compliance with all other federal laws applicable to the Department of the Interior. He is sued in his official capacity.

18.    Defendant U.S. FISH AND WILDLIFE SERVICE ("FWS") is a federal agency within the Department of the Interior. Through delegation of authority from the Secretary, the FWS administers and implements ESA, and is legally responsible for complying with the ESA's mandatory deadlines and making decisions and promulgating regulations under the ESA, including issuing proposed and final listing decisions and the processing of petitions such as the Petition to list the yellow-billed loon.

### IV.    STATUTORY BACKGROUND

19.    The ESA is a federal statute enacted to conserve endangered and threatened species and the ecosystems upon which they depend. 16 U.S.C. § 1531(b). The ESA "is the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." Tennessee Valley Authority v. Hill, 437 U.S. 153, 180 (1978). The Supreme Court's review of the ESA's "language, history, and structure" convinced the Court "beyond a doubt" that "Congress intended endangered

1    species to be afforded the highest of priorities." Id. at 174. As the Court found, "the plain intent of

2    Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever

3    the cost." Id. at 184.

4        20.    The ESA assigns responsibility to implement the statute to the Secretaries of Commerce

5    and the Interior, which in turn have delegated responsibility to the National Marine Fisheries Service

6    ("NMFS" or "NOAA Fisheries") and FWS respectively. Generally, NMFS has jurisdiction over marine

7    species, while FWS has jurisdiction over terrestrial and freshwater species, including all birds such as

8    the yellow-billed loon. The ESA protects species listed as either "endangered" or "threatened" by FWS

9    or NMFS. A species is "endangered" if it "is in danger of extinction throughout all or a significant

10   portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" if it is "likely to become an

11   endangered species within the foreseeable future." 16 U.S.C. § 1532(20)

12       21.    Once a species is listed, an array of statutory protections applies. For example, Section 7

13   of the ESA requires all federal agencies to "insure" that their actions neither "jeopardize the continued

14   existence" of any listed species nor "result in the destruction or adverse modification" of its "critical

15   habitat." 16 U.S.C. § 1536(a)(2). Section 9 and its regulations further prohibit, among other things,

16   "any person" from intentionally "taking" listed species or "incidentally" taking listed species without a

17   permit from FWS. 16 U.S.C. §§ 1538(a)(1)(B), 1539. Other provisions require FWS to designate

18   "critical habitat" for listed species, 16 U.S.C. § 1533(a)(3), require FWS to "develop and implement"

19   recovery plans for listed species, 16 U.S.C. § 1533(f), authorize the acquisition of land for the

20   protection of listed species, 16 U.S.C. § 1534, and make federal funds available to states to assist in

21   their efforts to preserve and protect threatened and endangered species, 16 U.S.C. § 1535(d).

22       22.    However, none of these protections come into force until a species is officially listed as

23   threatened or endangered under the ESA.

24       23.    In order to ensure the timely protection of species, Congress set forth the listing process

25   described below. The process includes mandatory, non-discretionary deadlines for the three required

26   findings that FWS must meet, so that species in need of protection do not languish in administrative

27   purgatory. The three required findings, described below, are the "90-day finding," the "12-month

28   finding," and the final listing determination.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF          Page 5

1       24.    Any interested person can begin the listing process by filing a petition to list a species
2   with FWS. 16 U.S.C. § 1533 (b)(3)(A); 50 C.F.R. § 424.14(a).

3       25.    Upon receipt of a petition to list a species, FWS has 90 days "to the maximum extent
4   practicable," to make a finding as to whether the petition "presents substantial scientific or commercial
5   information indicating that the petitioned action may be warranted." 16 U.S.C § 1533 (b)(3)(A); 50
6   C.F.R. § 424.14 (b)(1). If FWS finds that the petition presents substantial information indicating that
7   the listing may be warranted, FWS then publishes in the Federal Register a "90 day finding and
8   commencement of status review." 16 U.S.C. § 1533(b)(3)(A).

9       26.    Upon issuing a positive 90-day finding, FWS must then conduct a full review of the
10  status of the species. 50 C.F.R. 424.14. Upon completion of this status review, and within 12 months
11  from the date that the agency received the petition, FWS must make one of three findings: (1) the
12  petitioned action is not warranted; (2) the petitioned action is warranted; or (3) the petitioned action is
13  warranted but presently precluded by other pending proposals for listing species, provided certain
14  circumstances are present. 16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. § 424.14 (b)(3). This second
15  determination is known as a "12-month finding." This deadline is mandatory. There is no mechanism
16  by which FWS can extend the deadline for the finding.

17      27.    If FWS finds in the 12-month finding that the listing of the species is warranted, then the
18  agency must publish in the Federal Register a proposed rule, for public comment, to list such species as
19  endangered or threatened. 16 U.S.C. § 1533(b)(5).

20      28.    Within one year of the publication of a proposed rule to list a species, the ESA requires
21  FWS to render a final determination on the proposal. 16 U.S.C. § 1533(b)(6)(A).

22      29.    At such time, FWS must either list the species, withdraw the proposal, or if there is
23  substantial disagreement about scientific data, delay a final determination for up to six months to solicit
24  more scientific information. 16 U.S.C. §§ 1533(b)(6)(A)(i)(III) & 1533(b)(6)(B)(i).

25      30.    Concurrently with a final determination to list a species, FWS must render a final
26  decision concerning the designation of critical habitat for the species to the maximum extent prudent
27  and determinable. 16 U.S.C. §§ 1533(a)(3) & 1533(b)(6)(C). If FWS finds that designation of critical
28  habitat is prudent, but is not currently determinable, then FWS may extend the deadline to issue a final

1 regulation concerning critical habitat by no more than one additional year.     16 U.S.C. §

2 1533(b)(6)(C)(ii).

3       31.     It is critical that FWS scrupulously follow the ESA's listing procedures and deadlines if

4 species are to be protected in a timely manner, because the ESA does not protect a species until the

5 species is formally listed as threatened or endangered.

6                                   **V.     FACTUAL BACKGROUND**

7       32.     Plaintiffs' Petition to list the yellow-billed loon as a threatened or endangered species

8 was submitted on March 30, 2004 and received by FWS on April 5, 2004.  As summarized below, the

9 Petition details the factors that threaten the yellow-billed loon with extinction.

10      33.     The yellow-billed loon is a large, heavy-bodied water bird.  Adults generally range in

11 length between 774 and 920 millimeters and weigh between 4,000 and 6,000 grams.   The best

12 distinguishing field mark of the yellow-billed loon is the shape and color (bright yellow in summer,

13 pallid yellow or ivory in winter) of the bill. Male and female yellow-billed loons have similar plumage.

14 In winter, the species exhibits gray-brown over white plumage.   In summer, its plumage is

15 characterized by black feathers on the head and neck with a white anterior throat band of vertical white

16 stripes and a lower full "necklace" of vertical white stripes, a white breast, and white spots on the back

17 and wings.

18      34.     The yellow-billed loon is a holarctic species, meaning that its population spans the

19 Arctic regions of both Eurasia and North America.  Yellow-billed loons over-winter predominantly on

20 near-shore marine embayments and archipelagos on the west coast of North America, sometimes

21 reaching as far south as Baja California, and along the east coast of Asia.  They generally are thought to

22 migrate along coastal routes next to the United States, Canada and Russia, but may also use overland

23 routes.

24      35.     While population trends for the yellow-billed loon are difficult to determine due to lack

25 of research and understanding of migration patterns, scientists recognize that population numbers of the

26 yellow-billed loon are alarmingly low.  Alaska's coastal plain has an estimated population of 3,000

27 yellow-billed loons.  Western Alaska has an estimated population of 650 individuals making the range-

28 wide population in Alaska approximately 3,650 individuals.  An estimated 8,000 yellow-billed loons

1   are thought to occur in Canada with an additional 5,000 individuals thought to occur in Eurasia. With a
2   global population estimated as low as 16,650 individuals, the yellow-billed loon is one of the rarest
3   species of waterbirds that breed regularly within mainland North America.

4       36.    The habitat requirements of the yellow-billed loon are complex because this species
5   utilizes different habitat for breeding, migration, and wintering. Each of these three habitats requires
6   three elements to sustain yellow-billed loon populations: (1) ample forage, (2) minimal human
7   disturbance, and (3) an open-water environment low in toxins. The yellow-billed loon is in jeopardy
8   because there are no mechanisms in place to ensure these habitat requirements are maintained.

9       37.    Yellow-billed loons breed at 62-74° N latitude on deeper, clear-water, low-rimmed lakes
10  with steady warm-season water levels, abundant food supply, and sufficiently long open-water seasons
11  for incubation and fledging of young. Breeding lakes occur in low-lying treeless tundra regions, often
12  near lowland-upland transitions, or on large river deltas with untapped lakes. Water levels must remain
13  stable throughout nest inception and incubation. Drawdown during the nesting/brooding season, or
14  refill after winter drawdown, may reduce nesting success.

15      38.    Migration habitat for yellow-billed loons nesting in the Alaskan National Petroleum
16  Reserve appears to be between arctic tundra nesting grounds and near-shore marine waters in the
17  Yellow Sea adjacent to China. Stopovers occur along the way, presumably including feeding, as the
18  loons pass around Point Hope, Alaska; along the Chukchi Peninsula; near St. Lawrence Island; past or
19  across the Kamchatka Peninsula; and across northern Japan and North Korea. Yellow-billed loons
20  overwintering off southern Alaska may migrate overland to central Canadian breeding grounds.

21      39.    It is thought that yellow-billed loons spend approximately eight months exclusively in
22  marine environments. For this reason, the health of the marine wintering areas is extremely important to
23  the long-term survival of this species. Based on observed declines in a number of Alaska marine birds,
24  including red-throated loons and a number of sea ducks, there likely are substantial links between avian
25  health and the health of marine ecosystems.

26      40.    The yellow-billed loon is extremely sensitive to human disturbance, reacting to
27  disturbances occurring as much as 1 mile away, as well as to changes in its habitat. Unfortunately, the
28  yellow-billed loon occupies areas that are increasingly influenced by the impacts of human activities,

1    such as oil and gas exploration and development and global warming.

2        41.    The earth's climate is warming due to society's production of greenhouse gases,
3    primarily from the combustion of fossil fuels for energy.  The primary greenhouse gases are carbon
4    dioxide, methane, and nitrous oxide.  Increasing concentrations of greenhouse gases cause the earth's
5    atmosphere to retain a greater proportion of the sun's energy, warming the earth's climate much like the
6    interior of a greenhouse.  Climate science has advanced rapidly in recent years, and it has now been
7    firmly established that society's production of greenhouse gases is responsible for the unprecedented
8    rate of warming over the past century.

9        42.    For a number of reasons, the Arctic has experienced greater and more rapid warming
10   than temperate regions.  Average winter temperatures in some areas of the Arctic have already risen by
11   7° Fahrenheit.  Even using moderate projections of future greenhouse gas emissions levels, average
12   winter temperatures are projected to rise by 18° Fahrenheit over the Arctic oceans by the end of this
13   century.

14       43.    Global warming will likely affect the yellow-billed loon in several ways.  First, warmer
15   water and reduced ocean primary productivity will likely reduce food resources available to the loon.
16   Perhaps more significantly, sea level rise will inundate important freshwater breeding ponds, while
17   increased storm surges from diminished sea ice will also result in salt water intrusion on these
18   freshwater lakes.  Additionally, rising temperatures will result in drying of tundra ponds while melting
19   permafrost will lead to draining of such ponds.  Such habitat alterations have, in fact, already been
20   documented in published scientific literature.  Collectively, such impacts will likely lead to further
21   reductions in this already small and vulnerable population.

22       44.    Yellow-billed loons are threatened by other factors as well, including habitat destruction,
23   contamination of their habitat and food sources by oil and other toxic chemicals, anthropogenically
24   enhanced predation and disease, and human disturbance.  Many of these threats are linked to the
25   proliferation of oil and gas development in the yellow-billed loon's habitat, which can disrupt nesting,
26   feeding, and other behaviors in addition to directly destroying key habitat, and which also poses a risk
27   of harmful oil spills.  In addition, global warming will likely increase the amount of human disturbance
28   to which the sensitive yellow-billed loon is exposed, as greater portions of the Arctic become more

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF          Page 9

1    accessible to people. Increased disturbance will almost certainly lead to decreased breeding success
2    and increased mortality of the yellow-billed loon.    Many of these threats will interact with global
3    warming in cumulative and synergistic ways, further heightening the threat to the yellow-billed loon.

4        45.    Plaintiffs' Petition to list the yellow-billed loon under the ESA was received by FWS on
5    April 5, 2004. FWS made a positive "90-day" finding on the Petition on June 6, 2007. *See* "90-Day
6    Finding on a Petition To List the Yellow-Billed Loon as Threatened or Endangered," 72 Fed. Reg.
7    31256 (June 6, 2007). By law, FWS was required to make a 12-month finding on the Petition no later
8    than April 5, 2005. The agency failed to do so. On June 11, 2007, Plaintiffs sent FWS a 60-day notice
9    of intent to sue over the agency's failure to make the required finding. The required finding has not
10   been made. This litigation followed.

11                                   **VI.   CLAIM FOR RELIEF**
12   **(Violation of Endangered Species Act, 16 U.S.C. § 1533(b)(3), for Failure to Make a 12-month**
13                                   **Finding on the Listing Petition)**

14       46.    Plaintiffs reallege and incorporate by reference all the allegations set forth in this
15   Complaint, as though fully set forth below.

16       47.    FWS's failure to make a 12-month finding on the Petition to list the yellow-billed loon
17   as an endangered or threatened species is a violation of the ESA and its implementing regulations. 16
18   U.S.C. §§ 1533(b)(3)(B) & 1540(g). FWS's failure to perform its mandatory, non-discretionary duty
19   also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the
20   APA, 5 U.S.C. § 706(1).    Additionally, and/or alternatively, FWS's failure to comply with this
21   provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to
22   observe proper procedure under the APA, 5 U.S.C. § 706(2).

23                                   **VII.   PRAYER FOR RELIEF**
24       For the reasons stated above, Plaintiffs respectfully request that the Court grant the following
25   relief.

26       1.    Declare that FWS violated its non-discretionary duties under 16 U.S.C. § 1533(b)(3)(B)
27   of the ESA by failing to timely make a 12-month finding in response to the Petition to list the yellow-
28   billed loon under the ESA;

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF            Page 10

1     2.     Issue permanent injunctive relief compelling FWS to make and publish in the Federal

2  Register a 12-month finding on the Petition to list the yellow-billed loon under the ESA by a date

3  certain;

4     3.     Award Plaintiffs their costs of litigation, including reasonable attorneys fees; and

5     4.     Grant Plaintiffs such other relief as the Court deems just and proper.

8  DATE: December 19, 2007            Respectfully Submitted,

Brendan Cummings (CA Bar No. 193952)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252
Phone:  (760) 366-2232
Facsimile: (760) 366-2669
Email: bcummings@biologicaldiversity.org

Andrea A. Treece (CA Bar No. 237639)
Miyoko Sakashita (CA Bar No. 239639)
CENTER FOR BIOLOGICAL DIVERSITY
San Francisco Bay Area Office
1095 Market Street, Suite 511
San Francisco, CA 94103
Phone:  (415) 436-9682
Facsimile: (415) 436-9683
Email: atreece@biologicaldiversity.org
        miyoko@biologicaldiversity.org

Andrew E. Wetzler (CA Bar No. 202299)
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter St., 20th floor
San Francisco, CA 94104
Phone:  (614) 840-0891
Facsimile (415) 875-6161
Email: awetzler@nrdc.org

Attorneys for Plaintiffs